UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| v. | NO. 09-0166 |
| TEHRAN MICHAEL WILLS | SECTION: "F" |

<u>ORDER AND REASONS</u>

Before the Court is Tehran Michael Wills' *pro se* motion seeking a sentence reduction, compassionate release, or home confinement under 18 U.S.C. § 3582(c) and the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116-136. For the reasons that follow, the request for compassionate release is DISMISSED without prejudice for failure to exhaust administrative remedies and the request for home confinement is DENIED.

**Background**

Following his conviction of conspiracy to distribute and possess with the intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of cocaine hydrochloride and one kilogram or more of a mixture of substance containing a detectable amount of heroin, Tehran Michael Wills was sentenced by then-District Judge Engelhardt to an imprisonment term of 180 months.  Wills has served 86.5% of that sentence; he is currently housed at the Federal Prison Camp at Pensacola with a projected release date of March 24, 2022.

1

Wills submitted two requests seeking the Warden's assistance "in filing for a compassionate release motion."  In requests filed eight days apart in May 2020, Wills wrote:

> The mother of two of my daughters is deceased as a result of Breast Cancer. I have been out of their lives for more than 10 years and their mother died 6 months ago. They are struggling emotionally, physically & financially and desperately need my help. I am asking if there is anything that you can possibly do[.]

In response to the first (the May 20th) request, the prison staff member wrote on May 27 in the "Disposition" section of the form: "Please see attached policy for how to request a compassionate release."  On June 3, 2020, in response to the May 28th request, the prison staff member wrote in the "Disposition" section of the form: "You have a low FSA Risk score, age 39, and have not been referred to Unit Team by the Health Services Department. Therefore, you can be managed here at FPC Pensacola."

Wills now requests "immediate release to home confinement or a sentence reduction pursuant to the compassionate release provision in the CARES Act" due to his family circumstances, that is, because his mother, who is now the sole caretaker of his daughter, suffers from health conditions which make her particularly vulnerable should she contract COVID-19.

I.

*A.*

Congress prescribes certain prerequisites to district court consideration of motions seeking sentence modifications, including motions seeking compassionate release.  As amended by the First Step Act, 18 U.S.C. § 3582(c) provides that the Court "on a motion by the BOP or by the defendant after exhausting all BOP remedies, may reduce or modify a term of imprisonment, probation, or supervised release after considering the factors of 18 U.S.C. § 3553(a), if 'extraordinary and compelling reasons warrant such a reduction.'"  See United States v. Chambliss, 948 F.3d 691, 692-93 (5th Cir. 2020)(quoting 18 U.S.C. § 3582(c)(1)(A)(i)).  The reduction must also be "consistent with applicable policy statements issued by the Sentencing Commission."  § 3582(c)(1)(A). Relevant here, the Sentencing Commission's policy statement provides that certain family circumstances may constitute an extraordinary or compelling reasons warranting a sentencing reduction if, for example, the defendant's minor child's caregiver has died or become incapacitated.  See U.S.S.G. § 1B1.13 cmt. n.1(C)(i).

The text of 18 U.S.C. § 3582(c)(1)(A) is critical to resolving the exhaustion issue presented by this motion; § 3582(c)(1)(A) provides:

3

(c) Modification of an imposed term of imprisonment.--
The court may not modify a term of imprisonment once it
has been imposed except that--

(1) in any case--

(A) the court, *upon motion of the Director of the Bureau
of Prisons, or upon motion of the defendant after the
defendant has fully exhausted all administrative rights
to appeal a failure of the Bureau of Prisons to bring a
motion on the defendant's behalf or the lapse of 30 days
from the receipt of such a request by the warden of the
defendant's facility, whichever is earlier*, may reduce
the term of imprisonment (and may impose a term of
probation or supervised release with or without
conditions that does not exceed the unserved portions if
the original term of imprisonment), after considering
the factors set forth in section 3553(a) to the extent
that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a
reduction; or

(ii) the defendant is at least 70 years of age, has
served at least 30 years in prison, pursuant to a
sentence imposed under section 3559(c), for the offense
or offenses for which the defendant is currently
imprisoned, and a determination has been made by the
Director of the Bureau of Prisons that the defendant is
not a danger to the safety of any other person or the
community, as provided in section 3142(g);

and that such a reduction is consistent with applicable
policy statements issued by the Sentencing Commission[.]

(emphasis added).  Simply put, a defendant must exhaust remedies

with the BOP before a court may consider a motion for compassionate

release.  See, e.g., United States v. Raia, 954 F.3d 594, 596-97

(3d Cir. 2020)(holding that failure to comply with the §

3582(c)(1)(A) exhaustion requirement presents "a glaring roadblock

foreclosing compassionate release"); United States v. Alam, 960

F.3d 831, 835-36 (6th Cir. 2020)(declining to carve out a futility exception to the § 3582(c)(1)(A) exhaustion requirement).

The two simplest and most common scenarios implicating a prisoner's failure to exhaust administrative remedies are: when a prisoner files a motion with the Court without first requesting relief from the prison; or when a prisoner files a motion with the Court after requesting relief from the warden but before 30 days have lapsed since the request was lodged with the warden.  In both instances, the Court must dismiss without prejudice the prisoner's motion for compassionate release.  And, of course, the clearest case of exhaustion within the text of the statute is when a prisoner requests relief from the prison and 30 days pass with no response from the warden; any motion filed by the defendant with the Court in this scenario will generally be considered exhausted such that the Court may reach the merits of the request.

*B.*

Here, the Court is presented with different circumstances. Wills requested relief from the prison, which was denied well before the lapse of 30 days.  But he filed the present motion seeking compassionate release without first seeking administrative review of the prison's disposition of his request.  Under the circumstances, the government submits that Wills' motion seeking compassionate release should be dismissed without prejudice for

failure to exhaust his administrative remedies within BOP.  The
Court agrees.

Presented with this particular issue, two camps have emerged
in the district court case literature.  In one camp, courts find
that prisoners who submit requests to the prison regarding
compassionate release need only wait 30 days after an internal
prison decision (or no decision at all) to exhaust their
administrative remedies.  In the second camp, when the prison
timely denies an administrative request for compassionate release,
the prisoner must fully exhaust administrative appeals before
seeking relief in the district court.  The Court embraces the
result reached by the second camp, as it is anchored to the
statutory text.  For "all administrative rights to appeal" to be
"fully exhausted," in compliance with the statute, the
compassionate release petitioner must administratively appeal any
decision by the warden regarding compassionate release.  See,
e.g., United States v. Delco, No. 09-57, 2020 WL 4569670, at *4
(E.D. La. Aug. 7, 2020)(Ashe, J.)(finding that "it is precisely
because the warden denied the defendant's ... request within 30
days after its submission that he has not exhausted his
administrative remedies[; the defendant has failed to] show that
he has fully exhausted his administrative rights to appeal the
warden's denial of his request through the BOP's Administrative

Remedy Procedure[.]"); <u>United States v. Ellis</u>, No. 13-286, 2020 WL 4050409, at *2 (E.D. La. July 20, 2020)(Vance, J.)(citing the statute and district court case literature supporting a finding that the defendant must appeal any formal BOP decision in order to exhaust his administrative remedies); <u>United States v. Whirl</u>, No. 18-17, 2020 WL 3883656, at *1-2 (S.D. Miss. July 9, 2020)(noting that a defendant may submit an appeal on a BP-10 form to the appropriate Regional Director within 20 calendar days of the date the warden signed the response and that failure to do so is a failure to exhaust administrative remedies).   To determine otherwise would betray the statutory text and defeat the purpose of administrative exhaustion doctrine.  <u>See</u>, <u>e.g.</u>, <u>United States v. Cotto</u>, No. 16-36, 2020 WL 2735960, at *2 (E.D. La. May 26, 2020)(when BOP formally denies a defendant's motion, the defendant must appeal that decision to exhaust his or her administrative remedies); <u>United States v. Ng Lap Seng</u>, No. 15-706, --- F. Supp. 3d ---, 2020 WL 2301202, at * 6 (S.D.N.Y. May 8, 2020)(interpreting the statute's "lapse" language as "requiring the BOP's failure to respond to a prisoner's request for a compassionate release motion within thirty days," because interpreting the language to instead mean "a passage of time" would "substantially undermine [a goal of the] exhaustion requirement – protecting agency authority, expertise, and the opportunity to correct mistakes – as it would allow a defendant [to  bypass] higher-level BOP review" and

7

"render the statute's provision regarding full exhaustion of administrative remedies meaningless," and allow defendants to "forego appealing a warden's denial of their compassionate release request.").

Here, there is no indication that Wills administratively appealed the prison's disposition of his requests for compassionate release based on family circumstances. For this reason, his request for compassionate release must be dismissed without prejudice.

*C.*

The government presents another independent reason for the Court to dismiss without prejudice Wills' motion for failure to exhaust administrative remedies. The government submits that Wills presents a new and different fact in his motion to the Court than was submitted to the prison. In his requests to the prison, Wills focused on his daughters (plural) losing their mother to breast cancer; in his motion filed with the Court, Wills submits that his daughter (singular) lost her mother to breast cancer and that his mother suffers from COPD and other health issues that make her more susceptible to severe health impacts if she contracts COVID-19.

To be sure, the prisoner bears the burden of establishing that a sentence reduction is warranted, see United States v. Jones, 836 F.3d 896, 899 (8th Cir. 2016), and due regard for the administrative agency with governing authority over programs it administers or persons in its custody demands that the agency be given an opportunity to address issues within its authority. See Woodford v. Ngo, 548 U.S. 81, 89 (2006)(noting broad objectives of the administrative remedies exhaustion doctrine, including protecting administrative authority and promoting efficiency; and applying those objectives to the exhaustion requirement of the Prison Litigation Reform Act).  Thus, "[f]or a petitioner's request to the warden to exhaust administrative remedies in accordance with § 3582(c)(1)(A), the request must be premised on the same facts alleged in the corresponding motion filed with the court."  See United States v. Samak, No. 91-189, 2020 WL 2473780, at *2 (E.D. La. May 13, 2020); see also United States v. Valenta, No. 15-161, 2020 WL 1689786, at *1 (W.D. Pa. Apr. 7, 2020); see also United States v. Jenkins, No. 15-3079, 2020 WL 1872568, at *1 (D. Neb. Apr. 14, 2020)("[T]he Court does not view the administrative exhaustion of an initial request for compassionate release as serving to discharge that requirement for subsequent requests based on different evidence and argument.  Simply put, the Court cannot consider a motion for compassionate release that is based on evidence or arguments that weren't presented to the

Bureau of Prisons first."); <u>United States v. Mogavero</u>, No. 15-74, 2020 WL 1853754, at *2 (D. Nev. Apr. 13, 2020)(noting that the prisoner failed to exhaust administrative process given that exhaustion "requires the inmate to present the same factual basis for the compassionate-release request to the warden[, the petitioner's] motion is based on cancer plus COVID-19 exposure risks--and not merely her cancer diagnosis--but this new calculus was not presented to the warden.").

Whereas Wills petitioned the prison to file a motion for compassionate release on his behalf on the basis that his daughters' mother had died of breast cancer, Wills added a new fact in his motion to this Court: his daughter is being cared for by his mother, who is susceptible to COVID-19 because she suffers from COPD and bronchial asthma. The Court need not determine whether the addition of this new fact regarding his daughter's caretaker would preclude exhaustion because the Court has determined that an independent roadblock precludes a finding of exhaustion: Wills failed to exhaust his administrative appeals once the prison timely denied his request. Nevertheless, the Court summarizes and flags this independent issue for Wills' benefit as he pursues his remedies in the BOP.

Because Wills has failed to "fully exhaust[] all administrative rights to appeal" the failure of the Bureau of

Prisons to bring a motion on his behalf, he has failed to exhaust his administrative remedies. 18 U.S.C. § 3582(c)(1)(A).  Whether the exhaustion requirement is jurisdictional or a mandatory claims-processing rule, it has not been met here.

                                    II.

     Insofar as Wills also requests that this Court release him on home confinement under the Coronavirus Aid, Relief, and Economic Security Act (CARES Act), Pub. L. No. 116-136, 134 Stat. 281, the Court lacks authority to do so.

     The CARES Act provides that "the *Director of the Bureau [of Prisons]* may lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement under the first sentence of section 3624(c)(2) of title 18, United States Code."  Pub. L. No. 116-136, 134 Stat. 281, 516 (emphasis added).  The Director of the Bureau of Prisons "may" do so if "the Attorney General finds that emergency conditions will materially affect the functioning of the Bureau[.]" CARES Act, § 12003(b)(2). The Attorney General has so found. See William P. Barr, Memorandum for Director of Bureau of Prisons (Apr. 3, 2020).[1]  The Court underscores that, by statute, this authority relative to home confinement is conferred solely on the Director of the Bureau of

_____

1  Available at https://www.justice.gov/file/1266661/download

Prisons:  while the Director may "lengthen the maximum amount of time for which" Wills is placed on home confinement, CARES Act, § 12003(b)(2), this Court may not.  See 18 U.S.C. § 3621(b).[2]  Wills' request that this Court release him on home confinement under the CARES Act therefore must be denied.  As it must, the Court defers to the BOP administrative process concerning requests for home confinement due to COVID-19 concerns.

***

Accordingly, for the foregoing reasons, Wills' motion for compassionate release is DISMISSED without prejudice and his request for home confinement is DENIED.

New Orleans, Louisiana, August 26, 2020

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

---

2 Placement of inmates is BOP's prerogative. The Court simply lacks the power to place Wills on home confinement.  See 18 U.S.C. § 3621(b)("The Bureau of Prisons shall designate the place of the prisoner's imprisonment[.]");  see also § 3582(c)(limiting the Court's authority to modify or reduce a sentence).